1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11    NAOMI CASTRO,                    )    NO. EDCV 06-00952-MAN
                                        )
12                  Plaintiff,          )
                                        )    MEMORANDUM OPINION
13            v.                        )
                                        )    AND ORDER
14    MICHAEL J. ASTRUE,                )
      Commissioner of the              )
15    Social Security Administration,   )
                                        )
16                  Defendant.          )
      _____)

17

18

19        Plaintiff filed a Complaint on September 8, 2006, seeking review of

20   the denial by the Social Security Commissioner ("Commissioner")[1] of her

21   application for supplemental security income ("SSI").  On October 13,

22   2006, the parties consented to proceed before the undersigned a United

23   States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  The parties

24   filed a Joint Stipulation on May 25, 2007, in which:  Plaintiff seeks an

25   order reversing the Commissioner's decision denying benefits and

26   directing the payment of benefits or, alternatively, remanding the case

27

28

_____

[1]    Michael J. Astrue became the Commissioner of the Social
Security Administration on February 12, 2007, and is substituted in
place of former Commissioner Joanne B. Barnhart as the Defendant in this
action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
Security Act, last sentence, 42 U.S.C. § 405(g).)

for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.   The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on July 27, 2004. (Administrative Record ("A.R.") 10.)  Plaintiff claims to have been disabled since February 16, 1997, due to diabetes, manic depression, nightmares, and her inability to "be around people." (A.R. 10, 18, 27.) She has no past relevant work experience.  (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 18, 27.) On April 19, 2006, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 128-37.) On May 18, 2006, the ALJ denied Plaintiff's request for SSI (A.R. 10-15), and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision (A.R. 3-5).

## SUMMARY OF ADMINISTRATIVE DECISION

In his May 18, 2006 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period at issue. (A.R. 12.)  The ALJ further found that Plaintiff does not have a severe physical impairment and has "a very questionably severe mental impairment." (*Id.*)  The ALJ also found that Plaintiff does not have an impairment or combination of impairments listed in, or medically

2

equivalent to an impairment listed in Appendix 1, Subpart P, Regulation No. 4.  (A.R. 13.)  In addition, the ALJ found that Plaintiff did not provide "information sufficiently credible to warrant establishment of more restrictive limitations."  (A.R. 14.)

Assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform any kind of unskilled, entry level work.  (A.R. 13.)  Based on this assessment, as well as Plaintiff's age, education, and work experience, the ALJ found that jobs which Plaintiff can perform exist in significant numbers in the national economy.  (A.R. 14.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue.  (A.R. 15.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a

whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Servs, 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. Id. at 1041; see also Morgan v. Comm'r. of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four issues. First, she contends that the ALJ failed to develop the record properly. Second, she alleges that the ALJ made improper credibility findings. Third, she contends that the ALJ improperly ignored her treating physician's opinion regarding her functional status. Fourth, she complains that the ALJ failed to obtain the testimony of a vocational expert. (Joint Stipulation ("Joint Stip.") at 2-3.)

**A.   The ALJ Failed To Adequately Develop The Record Regarding Hospitalization At Arrowhead Regional Medical Center**

Plaintiff contends that during the administrative hearing, her counsel mentioned that Plaintiff had additional hospital records, and

4

requested that the ALJ issue a subpoena for such records. (Joint Stip. at 3.)  Plaintiff argues that, by rejecting her counsel's request, the ALJ failed to develop the record, thereby committing legal error. (*Id.* at 4.)

In social security cases, the ALJ has a duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1288); *see also* 20 C.F.R. § 416.1444 (at the administrative hearing, the ALJ "looks fully into the issues"). This is true even when the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993).  The ALJ's duty to develop the record extends from the basic premise that Social Security hearings are not adversarial in nature. Orcutt v. Barnhart, 2005 WL 2387702, *3 (C.D. Cal. 2005); *see also* Sims v. Apfel, 530 U.S. 103, 110-11 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits");.

There is no shortage of arguments on either side as to whether: the ALJ was legally required to issue the requested subpoena and/or failed to give Plaintiff sufficient time to produce her additional medical records; Plaintiff failed to present medical reports in a timely manner; and the ALJ's statement that his decision would likely not be rendered for "a couple of months" constituted a commitment to hold the record open for at least two months. (Joint Stip. at 3 - 8.) However, the critical facts -- that there existed records of Plaintiff's recent hospitalization and such records were not contained in the administrative record -- are undisputed. The ALJ made no effort to obtain such records and, thereby, to ascertain the extent of the

5

Plaintiff's impairment(s).  As a result, the ALJ has failed to fully and fairly develop the record.

Accordingly, remand for further development of the record is needed.

**B.    The ALJ Committed Legal Error By Failing To Give Specific Reasons For Discrediting Plaintiff's And Her Partner's Testimony.**

Courts give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Sec'y., 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that an ALJ's credibility finding is given great weight when supported specifically). Generally, an ALJ is free to disregard a claimant's testimony if the claimant fails to provide objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain or other symptoms alleged. *See, e.g.,* Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  However, when a claimant produces objective evidence of underlying medical impairment and testifies that he or she experiences pain more intense than that established by the objective medical findings, the ALJ may discredit the claimant's testimony only by making specific findings to justify such a decision. Cotton, 799 F.2d at 1407 (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985).  Moreover, unless the ALJ finds that the claimant is malingering, the ALJ must give clear and convincing reasons for rejecting the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

6

Plaintiff alleges that the ALJ erred by not giving weight to "assertions of Plaintiff or her partner without providing 'clear and convincing' reasons for rejecting [them]." (Joint Stip. at 9.) In this respect, after summarizing Plaintiff's medical reports, the ALJ stated:

Accordingly, having considered all the medical evidence of record, I find nothing to indicate that [Plaintiff] has any physical limitations or that she would be mentally unable to perform unskilled, entry level work. Indeed, the written statements (Exhibit 2-E, 3-E) and testimony of [Plaintiff] and her "partner"[2] establish no different conclusions. In response to flagrantly leading questions, [Plaintiff] asserted: right hand numbness and tingling for the past six to eight months, back pain, knee pain, stomach problems, decreased concentration due to pain, insulin dependent diabetes mellitus, fatigue, dizziness, depression, and labile moods. She asserted she takes diurnal naps, sees a psychiatrist in Redlands, and occasionally goes to the emergency room. Her "partner" has supported her from [sic] the past two years they have lived together and does light housework, but otherwise would simply not detail her activities of daily living. Her "partner" said they had lived together two years and that she supports the claimant. She said [Plaintiff] was depressed, tired, complained of pain all over, and did little housework.

---

[2]   Plaintiff's partner, Rene Salladay, testified during the administrative hearing. (A.R. 135-36.)

7

1  (A.R. 13-14.)

2

3       The ALJ then concluded:

4

5       In light of minimal objective findings and infrequent,

6       conservative treatment and due to the complete lack of any

7       evidence to support her contention of a non-functioning life-

8       style, I cannot give weight to the assertions of [Plaintiff]

9       or her "partner."  I also note the observations of the Social

10      Security Administration claims representative who did a

11      lengthy initial interview.  She noted that [Plaintiff] had no

12      perceived difficulties, but did seem somewhat shy and

13      intimidated by her "burly female friend."  She also reported

14      that [Plaintiff] spoke softly and smiled inappropriately

15      (Exhibit 1-E, p.2).  Otherwise, however, she did not note any

16      difficulties which would preclude the performance of

17      unskilled, entry level work.  Therefore, while I have

18      considered the statements of [Plaintiff] and her "partner" I

19      cannot find that they have provided any information

20      sufficiently credible to warrant the establishment of more

21      restrictive limitations.

22

23  (A.R. 14.)

24

25      The ALJ's reliance on the SSA claims representative's observations

26  is troubling, and those observations do not provide any legitimate

27  reason for rejecting Plaintiff's subjective pain testimony.  *See, e.g.,*

28  Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 602 (9th Cir.

8

1983)(holding that "the [ALJ's] observation of the claimant at the
hearing, at least in cases involving alleged psychological disability,
does not provide a sufficient reason to reject the otherwise
uncontroverted medical evidence"). In particular, the ALJ's gratuitous
reference to the SSA claims representative's observations -- that
Plaintiff seemed "somewhat shy and intimidated by her 'burly female
friend'" and Plaintiff "spoke softly and smiled inappropriately" --
suggests the possibility of an improper bias based on Plaintiff's sexual
orientation. (A.R. 14.) These observations have little bearing on the
credibility of Plaintiff or her partner.

Moreover, the ALJ's statement that there is a "complete lack of any
evidence" supporting Plaintiff's contentions regarding her limitations
is inaccurate. The ALJ acknowledged that Plaintiff has a history of
depression and that a State Agency psychiatrist concluded Plaintiff has
an affective disorder and substance addiction disorder. (A.R. 13.)
These findings are consistent with the opinions of Plaintiff's treating
physicians at Redlands Yucaipa Guidance Clinic, who diagnosed Plaintiff
with a Major Depressive Disorder and Amphetamine Dependence. (A.R.
99,106.) Thus, it is clear that Plaintiff provided objective medical
findings establishing a medical impairment that could reasonably be
expected to produce some of the symptoms she alleged.

Further, to discredit Plaintiff's testimony after she produced
objective evidence of medical impairments, the ALJ should have pointed
to specific evidence of record that caused him to so discredit her
testimony. *See* Cequerra v. Sec'y of Health and Human Serv., 933 F.2d
735, 738 (9th Cir. 1991)(stating that when an ALJ's decision rests on a

negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record"). Here, the ALJ merely stated that there is a "complete lack of any evidence to support [Plaintiff's] contention of a non-functioning life-style" and failed to specify evidence of record to justify his conclusion that Plaintiff's and her partner's statements about Plaintiff's limitations were not credible. This constitutes legal error.

Accordingly, because the ALJ did not provide legitimate reasons for discrediting either Plaintiff's or her partner's statements, the case should be remanded to allow the ALJ to correct this error.

**C.   The ALJ Did Not Err By Omitting Plaintiff's Global Assessment Of Functioning Score.**

The Global Assessment of Functioning score ("GAF") is "the clinician's judgment of the individual's overall level of functioning," which is a subjective determination based on a scale of 1-100. Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (9th Cir. 2006)(citing DSM-IV [Diagnostic Statistical Manual] at 32). A GAF score of 60, for instance, may indicate "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) [or] any moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers)." Boyd v. Apfel, 239 F.3d 698, 700 (5th Cir. 2001)(citations omitted); see also Demaria v. Apfel, 1998 WL 30015, *5 (N.D. Cal 1998)(stating that "a mild mental impairment, such as a GAF of 65 would indicate a non-severe mental

impairment"). Further, a GAF score of 41 to 50 reflects "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Boyd, 239 F.3d at 702 (citing DSM-IV, p. 32).

However, a low GAF score does not provide conclusive evidence of disability. "The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (August 21, 2000), 2000 WL 1173632.

Here, Plaintiff complains that the ALJ "did not properly consider the GAF score of 52 opined by Dr. Tran." (Joint Stip. at 15.) However, Plaintiff's statement that her treating physician Dr. Tran "diagnosed [her] with . . . a [GAF] score of 52" is inaccurate. The record shows that, after examining Plaintiff, Kristen Slagter, MSW, from the Redlands-Yucaipa Guidance Clinic, reported a GAF score of 52 on June 30, 2004. (A.R. 106.) This report by Ms. Slagter was endorsed by Plaintiff's treating physician Dr. Quy Tran on July 24, 2004. (Id.) However, on that same day, i.e., July 24, 2004, Dr. Tran rated Plaintiff's GAF score at 65. (A.R. 99.)

Plaintiff argues that the ALJ erred by not providing specific and legitimate reasons for disregarding "Plaintiff's significantly low GAF

11

score determined by Dr. Tran." (Joint Stip. at 16.)  In support of this argument, Plaintiff cites <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984), stating that it is an error for an ALJ to ignore or misstate competent evidence of record in order to justify his conclusion. (Joint Stip. at 15.)  However, Plaintiff's reliance on <u>Gallant</u> is misplaced.

In <u>Gallant</u>, the court concluded that the ALJ erred by ignoring the claimant's testimony regarding disabling pain that was corroborated by the medical reports of 11 treating physicians.  <u>Gallant</u>, 753 F.2d at 1456.  Here, by contrast, the issue turns on a GAF score.  Although the Ninth Circuit has not addressed this issue, the Sixth Circuit has held that "while a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002).  "The ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *Id.*  This Court agrees that the ALJ was not required to discuss Plaintiff's GAF score, even though it might have been helpful if the ALJ provided some details regarding it.[3]

Accordingly, the Court concludes that the ALJ did not commit error by not addressing Plaintiff's low GAF score of 52 in his decision, especially since Plaintiff's GAF scores varied significantly.

[3]    It should also be noted that on July 15, 2004, Ms. Slagter reported that Plaintiff had "agitated motor behavior" and was anxious, depressed and constricted.  Nevertheless, Ms. Slagter also concluded that:  Plaintiff's speech was "within normal limits;" she had no cognitive deficit or memory problems; her thought process was logical; there was no problem with Plaintiff's "thought contents/delusions" or with her "perceptual processes/hallucinations;" that Plaintiff's insight was limited, but her judgment was within normal limits. (A.R. 103.)  In addition, Ms. Slaghter noted in her June 30, 2004, report that Plaintiff had no current suicidal ideation and intent.  (A.R. 105.)

**D.  <u>The ALJ Erred By Failing To Obtain The Testimony Of A Vocational Expert</u>.**

Plaintiff next alleges that, because the ALJ found that she suffered from non-exertional limitations, the ALJ's failure to obtain testimony from a vocational expert constituted error.  (Joint Stip. at 19.)

At step five of the sequential procedure,[4] the burden shifts from the claimant to the Commissioner to show that the claimant is able to perform other work that exists in the national economy.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).  The ALJ can meet this burden by either taking the testimony of a vocational expert ("VE") or by referring "to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*  The Medical-Vocational Guidelines, which are commonly called the Grids, are tables that are used "for determining the availability and number of suitable jobs for a claimant." <u>Lounsbury</u>, 468 F.3d at 1114.  The grids categorize jobs by their physical-exertional requirements.  *Id.*  Because the Grids are predicated on a claimant's limitations regarding strength requirements of jobs

---

[4]  "The Ninth Circuit articulated the five-step sequential process for determining whether a claimant is 'disabled' in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)." <u>Lounsbury v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).  The five steps are as follows: Step one determines whether the claimant had been engaged in a substantially gainful activity; step two determines whether the claimant has medically determinable impairments that are severe; step three determines whether the claimant's impairment(s) "meet or equal" an impairment listed in the regulations; step four is assessment of the claimant's residual functional capacity, and determination of whether the claimant can do his/her past relevant work; and step five is determination of whether the claimant can do any other work.  *Id.*

("exertional limitations"),[5] they may not be fully applicable if a claimant suffers from "non-exertional" limitations. *Id.* (citing 20 C.F.R. Part 404, Subpart P, Appx. 2 § 200.00(e)). Non-exertional limitations are non-strength related limitations such as mental, sensory, postural, manipulative, and environmental limitation. <u>Cooper</u>, 880 F.2d at 1156 n.7.

Here, the ALJ found that Plaintiff does not have a severe physical impairment, but has a "very questionably severe mental impairment." (A.R. 12.) The ALJ further stated that Plaintiff's "ability to work at all exertional levels has been compromised by nonexertional limitations." (A.R. 14.) However, without proper explanation, the ALJ concluded that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (A.R. 14.) The ALJ then used Section 204.00[6] in the Medical-Vocational Guidelines to support his conclusion that Plaintiff is "not disabled." (A.R. 14.)

The ALJ did not employ the services of a Vocational Expert ("VE") during the hearing. (A.R. 129.) This constitutes legal error, because

---

[5]    Exertional limitations are strength related limitations such as limitations in sitting, standing walking, lifting carrying pushing and pulling. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1156 n.6 (9th Cir. 1989).

[6]    Section 204.00 of the Medical-Vocational Guidelines refers to "maximum sustained work capability limited to heavy work as a result of severe medically determinable impairments," and states that "an impairment which does not preclude heavy work would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled." 20 C.F.R. Part 404, Subpart P, Appx. 2 § 204.00.

14

1   after making an express finding that Plaintiff had a "severe mental
2   impairment," even if the ALJ characterized that impairment as "very
3   questionable" (A.R. 12), the ALJ was not free to rely solely on the
4   Grids in determining Plaintiff's disability. *See* <u>Holohan v. Massanari</u>,
5   246 F.3d 1195, 1209 (9th Cir. 2001)(holding that it was error for ALJ to
6   rely entirely on Grids when ALJ found that claimant had no severe
7   physical impairments, but had severe psychiatric impairments).
8
9       Accordingly, on remand, the ALJ should correct this error  by using
10  the testimony of a VE.
11
12  **E.    <u>Remand Is Required</u>.**
13
14      Here, remand is appropriate to allow the ALJ the opportunity to
15  correct the above errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587,
16  593 (9th Cir. 2004)(remand for further proceedings is appropriate if
17  enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888
18  F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in
19  the record).
20
21                              **CONCLUSION**
22
23      Accordingly, for the reasons stated above, the denial of benefits
24  is REVERSED, and this case is REMANDED for further proceedings
25  consistent with this Memorandum Opinion and Order.  Judgment shall be
26  entered reversing the decision of the Commissioner, and remanding the
27  matter for further administrative action consistent with this Memorandum
28  Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 20, 2008

                              /s/
                              MARGARET A. NAGLE
                  UNITED STATES MAGISTRATE JUDGE

16